PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. ANDRÉS LÓPEZ, Defendant and Appellant.

No. 7342.   Argued January 24, 1939.—Decided February 25, 1939.

*González Fagundo & González, Jr.,* for appellant. *R. A. Gómez, Prosecuting Attorney* and *Luis Janer, Assistant Prosecuting Attorney,* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

Andrés López Maldonado was accused in the Municipal Court of Humacao by Eleuteria Rivera because "being the father of the minors Felipe Rivera, of 6 years of age, and of Carmen Gloria and Víctor Rivera, of 8 years of age each one, had while cohabitating with the complainant, he has illegally, voluntarily and without any legal excuse failed to comply with the duties of a father imposed upon him by law,

not providing said minors with the necessary food, clothing and medical assistance in spite of the fact that he has sufficient money and means to comply with his paternal duties and has been requested to do so several times.''

Having been found guilty by the municipal court, he appealed to the district court. From the minutes taken at the trial *de novo* in the appellate court, we transcribe the following:

"The defendant waived the reading of the complaint and filed a demurrer alleging that it did not state facts sufficient to constitute an offense, and the court, after hearing the parties, dismissed the demurrer. The defendant then pleaded not guilty. The case went to trial and the defense moved that the case be filed away alleging that a civil action can not be established within a criminal prosecution and further because the complaint was not verified, and the court denied the request of the accused. The defense then offered in evidence a marriage certificate of the defendant, and the case was submitted.

"The court, after examining the complaint, the answer and the evidence introduced, and in accordance with what was decided in the case of *People* v. *Rohena,* 52 P.R.R.——, finds the defendant guilty and sentences him to three months in jail, with costs, but the sentence is suspended so long as the defendant gives to the complainant, for the support of their children, the amount of two dollars weekly for each one of the three children.

"And it is hereby ordered that should the defendant fail to comply with the terms of this judgment, he shall be conducted from this court of justice to the district jail and there surrendered to the warden of that penal institution to remain for the time stated in this judgment.''

López Maldonado appealed to this court. He assigns in his brief the following errors:

"1. The court erred in dismissing the demurrer filed by defendant for want of facts sufficient to constitute an offense.

"2. The court erred in denying the motion of the defendant praying that the case be filed away.

"3. The court erred in admitting oral testimony tending to establish that Felipe, Carmen Gloria and Víctor Rivera were sons of the accused.

"4. The court erred in applying sections 128, 129 and 143 of the Civil Code, 1930 ed., stating that parenthood, in the manner in which its proof has been attempted in this case, can be established within a criminal proceeding.

"5. The court erred because it violated section 250 of the Civil Code, 1930 ed.

"6. The judgment is against the weight of the evidence."

Arguing the first assignment of error the appellant maintains that the complaint is insufficient because it does not appear from its face that the children were legitimate, legitimated, natural, acknowledged illegitimate or adopted.

We are familiar with the complaint. The applicable statute is section 263 of the Penal Code, 1937 ed. It reads:

"Every parent of any legitimate, legitimated, natural, or acknowledged illegitimate and adopted child who wilfully omits, without lawful excuse, to perform any duty imposed upon him by law or to furnish necessary food, clothing or medical attendance to such child, is guilty of a misdemeanor; *Provided, however,* That when complaint is filed against a person under the provisions of this section and such person is sentenced, the court may suspend sentence under such condition as it may deem convenient to the welfare of the child."

In our opinion, the complaint is not insufficient to such an extent as to require a conclusion that the commission of the offense that the defendant is charged with, does not appear from it.

The penal statute in effect up to 1931, began "Every father or mother of a child . . ." and as it was construed to refer to legitimate children only (*People* v. *Ferrán,* 26 P.R.R. 230), the legislator amended it so as to include all kinds of sons. We are dealing but with one offense the gist of which, as is argued by the district attorney in his brief, is the voluntary and inexcusable abandonment of the children, whether they are of one kind or another, and, therefore, if the complaint speaks of children, it sets forth the fundamental fact and leaves it up to the time of the trial to prove their status.

If the defendant wished more detailed information he could have moved for a bill of particulars. No error was committed.

The other errors assigned can and will be studied together. Repeatedly the appellant insists that inasmuch as this case deals with illegitimate children, he could only have been found guilty if a final judgment rendered in a criminal or civil suit were shown to exist, from which judgment one might infer the paternity, or should there exist an indubitable document where he expressly recognized the filiation, in accordance with the provisions of sections 128, 129 and 143 of the Civil Code, 1930 ed. He maintains that his "contention is that the paternity or maternity of the illegitimate child should be established as a fact preceding or pre-existent to the claim for support."

We do not agree. We are of the opinion that the district court did not commit error in admitting the testimony of Eleuteria Rivera, mother of the minors, as to the fact that she lived in concubinage with the defendant, who was a married man, and that the minors in question were born from that union, whom he supported for a period of time and later abandoned; nor that it did commit error in permitting Simón Tolentino and Angel Vigoró, witnesses for the prosecution, to testify as to the facts, nor in basing on the testimony of those three witnesses its judgment finding the defendant guilty of voluntarily and inexcusably failing to support his minor illegitimate children Felipe, Carmen Gloria and Víctor Rivera, as provided by section 263 of the Penal Code.

Recently this court held in the case of *People* v. *Rohena,* 52 P.R.R.——, that:

"The fact of parentage, that is, the relationship of parent and child which may exist between a defendant and the minor in question, may be shown within a prosecution for abandonment of such child."

And many years ago in the case of *People* v. *González*, 26 P.R.R. 379, this court spoke through Mr. Associate Justice Wolf, after transcribing section 132 of the Civil Code, as follows:

"This section as written would not cover the case of an acknowledged natural child unless the word 'descendants' covers such a case, and no one in this country would doubt that a man could not contract marriage with his acknowledged natural daughter, and hence he would be guilty of incest in having communication with her.

"The court below bases its decision partly on the ground that the parental relation in a case of this kind ought to be beyond discussion, and that as the information alleged that the daughter had not been acknowledged, there was no legal relation between the parties. In other words, that the law demands in this class of cases that some legal relations exist. This theory of the court is founded on the rule which generally prevails that the paternity of a child may not be investigated. We interpret this rule to mean that the courts may not be invoked to establish a civil relation between father and child, probably for the protection of property rights and of the tremendous inconvenience to which society would be subjected if suits of this kind could be indiscriminately begun. It is fundamentally more a rule of property than it is of anything else. But the sanction of the criminal law is very different and this section of the code was aimed to prevent communication between two persons having a blood relation within certain forbidden degrees. 'Within the degrees of consanguinity which are declared to be void,' says the law. Having no doubt that a marriage between these two persons could be declared illegal, we have no doubt that the information stated a crime. Cases in the United States supporting the conclusion at which we have arrived are as follows: *People* v. *Lake*, 110 N. Y. 61; *Cecil* v. *Commonwealth*, 131 S. W. 782; *Clark* v. *State*, 45 S. W. 576; *Wadkins* v. *State*, 124 S. W. 959; *Lipham* v. *State*, 53 S. E. 817; 14 R.C.L. 33.

"We are aware of the decisions of this court in civil matters that the word 'child' means generally a legitimate child, but here we are treating of the carnal connection of any two persons who have no legal right to marry. We, cannot agree with the appellant that a marriage between himself and his illegitimate daughter would have been legal or in any way countenanced by our laws.

"It may be that the courts should watch the proof in prosecutions of this kind with great care, inasmuch as fraud or blackmail might

be 'perhaps' attempted. No man ought to be convicted on a charge of this kind unless the statement of the alleged mother was well corroborated. We have frequently said that in filiation cases the proof ought to be strong, and the proof in a case of this kind would have to be even stronger. This is only another way of saying that a defendant is entitled to careful instructions on the matter of reasonable doubt.''

That is the farthest one may go in cases of this nature, that is, to take into account the recommendations appearing in the last paragraph of the opinion transcribed, but never to place an unsurmountable stone wall before the path of justice that requires that the parents do not abandon their children, even though born in violation of the duties imposed by marriage and by virtue of criminal acts. Should we adopt any other construction, we would pervert the purpose of the law and we would, in a certain way, reward a delinquent merely because he is one.

It is insisted upon that the statute speaks of acknowledged illegitimate children and that section 129 of the Civil Code expressly provides that the right to claim support by illegitimate children that have not been acknowledged can only be exercised if the paternity or maternity is inferred from a final judgment rendered in a civil or criminal suit or if it appears from an indubitable document of the father or the mother, where the filiation is expressly acknowledged.

Illegitimate children are divided into two classes, to wit: children born out of wedlock, from parents who, at the moment when such children were conceived, could have intermarried, and children born out of wedlock, from parents who, at the time they were conceived, could not have intermarried. The former are called natural children and it is in their behalf that the law created an action for their acknowledgment. Sections 125, 126 and 127 of the Civil Code, 1930 ed. In behalf of the latter no such action exists. The civil law only acknowledges them the right—section 128 of the Code— to such support from the parents as is prescribed in section 143.

There is no doubt that the word acknowledged as used by the legislator in regard to illegitimate children in criminal law—section 263 of the Penal Code, 1937 ed.—did so unwittingly. But starting from the basis that they do exist, we believe that it means that the crime is only committed where a father, who is in a position to do so, fails to support his illegitimate issue whom he has held as such children publicly or privately, or because being his issue, he would have been bound to acknowledge them should they have been natural children. Thus, reasonably construing the provisions of the Civil Code—section 129—in harmony with the amendment introduced by the Legislative Assembly to the penal law in 1931 (Act No. 36 of 1931, page 352), we are of the opinion that the criminal proceeding therein referred to can be the one rendered within the criminal action prosecuted for abandonment of minors as in the instant case.

If it is shown therein, beyond all reasonable doubt, that the minor was his son, or had held him as such, and, consequently, that he should have acknowledged as such or had already acknowledged him, and that in spite thereof, voluntarily and without any legal excuse had failed to comply with the duties imposed upon him by law to furnish the child with the required food, clothing, or medical assistance, he should be found guilty even though the document referred to in the second paragraph or the judgment rendered in a civil action of which the first paragraph of section 129 of the Civil Code so many times cited speaks, are not presented.

Within our present state of the law, the judgment rendered in a criminal prosecution of which said section speaks, can be no other than the one rendered in the criminal action for abandonment of minors where all the essential facts can be duly established. The duty of the father arises from the material fact that he is the father. Once it has been duly proved that he is the father, and that so being he failed to discharge his duties in the manner established by the criminal law, the crime should be understood to have been committed.

And that is what happened in the case at bar. After having examined the evidence we consider it final. It shows that the defendant, although a married man, induced Eleuteria Rivera to go to live with him in concubinage, and that from that union the three minor children were born, whom he later abandoned, though he was in a position to support them.

See the following cases where it was held that although there exists a special proceeding for a declaration of heirship, where an heir takes advantage of another action without making use of the former proceeding, he may, within the latter suit and for all its purposes, establish his standing as heir making use of all appropriate evidence: *Morales et al.* v. *Landrau*, 15 P.R.R. 761; *Soriano et al.* v. *Rexach*, 23 P.R.R. 531, *Fortis* v. *Fortis*, 25 P.R.R. 64, *Succn. of Rodríguez* v. *Pérez*, 25 P.R.R. 73, *Casanovas & Co.* v. *Ramírez et al.*, 25 P.R.R. 581, *Méndez* v. *Martínez*, 26 P.R.R. 87, *Heirs of Torres* v. *Torres*, 29 P.R.R. 847, *Ginorio* v. *Registrar*, 50 P.R.R.——.

By virtue of the foregoing reasons, the appeal should be dismissed and the judgment appealed from affirmed.

Mr. Justice Wolf dissented.